FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 17 2012 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

THOMAS HAYNES,

                Petitioner,

        v.

ROBERT ERCOLE, Superintendent,
Greenhaven Correctional Facility,

                Respondent.

-----------------------------------------------------------------x

**MEMORANDUM & ORDER**
07 CV 3723 (MKB)

BRODIE, United States District Judge:

    Petitioner Thomas Haynes brings the above-captioned petition pursuant to 28 U.S.C. § 2254, in which he alleges that he is being held in state custody in violation of his federal constitutional rights. Petitioner's claims arise from a judgment of conviction after a jury trial in New York Supreme Court, Kings County for robbery in the first degree and possession of a weapon in the second degree. Petitioner was sentenced to concurrent prison terms of fifteen years for the robbery count and ten years for the weapon possession count. Petitioner appealed his conviction to the New York Appellate Division, Second Department, raising two claims. First, Petitioner argued that the evidence at the suppression hearing lacked credibility and was insufficient to establish reasonable suspicion for the traffic stop in violation of his rights under the Fourth and Fourteenth Amendments. Second, Petitioner claimed that he was denied effective assistance of counsel at trial in violation of his rights under the Sixth Amendment. The Appellate Division rejected Petitioner's claims and affirmed his conviction. *People v. Haynes*, 820 N.Y.S.2d 299 (App. Div. 2006). The New York Court of Appeals denied leave to appeal.

*People v. Haynes*, 7 N.Y.3d 848 (2006). Petitioner raises both claims in the instant petition. For the reasons set forth below, the petition is denied.

I. **Background**

The evidence at trial showed that on December 6, 2001, Petitioner, his brother Titus Haynes, and a man that was never apprehended, held Larry McCoy at gunpoint, taking McCoy's jacket, cellphone and wallet. (Resp. Opp. 2.) Approximately ten minutes later, three police officers observed Petitioner hail a livery cab. *Id.* When the cab stopped, Petitioner's brother as well as another co-defendant Michael Outler ran from opposite corners of the street and got into the cab. *Id.* The cab then began driving erratically and at an excessive speed. *Id.* Police officers stopped the cab and asked Petitioner and his co-defendants, all of whom were in the rear passenger seats, to step out of the cab. *Id.* As Petitioner and his co-defendants exited the cab, one of the police officers noticed a handgun in plain view on the back seat of the cab between where Petitioner and his brother had been sitting. *Id.* Police officers then searched the cab and found crack cocaine and marijuana in the back seat. *Id.* The police officers found McCoy's cellphone under the driver's side seat and later recovered McCoy's jacket from Petitioner. *Id.*

Prior to Petitioner's trial, the trial court held a suppression hearing. Petitioner argued that the court should suppress all of the property recovered in the cab because the police officers did not possess the requisite reasonable suspicion to stop the cab. (Resp. App. Br. 8–9.) The trial court denied Petitioner's motion to suppress, finding that Police Officer Darien Quash's testimony was credible,[1] that there was reasonable suspicion to stop the car, that the movements of the passengers in the rear seat permitted the officers to ask them to exit the cab, and that the

---

[1] At the suppression hearing, Darien Quash was the only police officer that testified concerning the police officers' reasonable suspicion to stop the cab.

2

officers were allowed to search the cab after seeing a handgun in plain view on the rear seat. *Id.* at 10.

The trial court next held a *Sandoval* hearing.[2] *Id.* The trial court held that, if Petitioner chose to testify, the People would not be permitted to ask any questions regarding Petitioner's youthful offender adjudication but could ask about Petitioner's adult felony conviction. *Id.* Specifically, the People would be allowed to ask whether Petitioner had ever been convicted of a felony, the date of the conviction and whether it was for theft. *Id.* At trial, Petitioner took the stand and testified on direct that he had previously pled guilty to a felony when he was 17. (T. at 424–25.) In light of Petitioner's direct testimony, the People asked the court for permission to ask Petitioner on cross examination if his felony conviction was as an adult. *Id.* at 428–29. The trial court granted the People's request. *Id.* During cross-examination, the People asked Petitioner the date of his conviction, whether it was for theft, and if he was an adult at the time of the conviction. *Id.* at 439. Before Petitioner could answer the People's question regarding whether his conviction was as an adult, Petitioner's trial counsel objected and asked to approach. *Id* at 439–40. At sidebar, Petitioner's trial counsel indicated that he had understood the trial court's *Sandoval* ruling to allow for testimony of Petitioner's prior felony conviction but not for testimony that the conviction was for theft. *Id.* at 441. The trial court informed counsel that his *Sandoval* ruling was clear, and the People's questions were within the scope of his ruling, so long as the People did not continue any further down the current line of questioning. *Id.* at 441–42.

---

[2] "In New York state courts a defendant may request a preliminary hearing, known as a *Sandoval* hearing, to determine whether, if he elects to testify, his prior criminal record may be used to impeach his credibility." *Norde v. Keane*, 294 F.3d 401, 408 n.1 (2d Cir. 2002); *see People v. Sandoval*, 34 N.Y.2d 371 (1974).

Petitioner was convicted of robbery in the first degree and possession of a weapon in the second degree. Petitioner appealed the denial of his motion to suppress and claimed he received ineffective assistance of counsel as a result of his counsel's misunderstanding of the trial court's *Sandoval* ruling. The Appellate Division rejected Petitioner's claims and affirmed his conviction. *People v. Haynes*, 820 N.Y.S.2d 299 (App. Div. 2006). Regarding Petitioner's Fourth Amendment challenge, the Appellate Division held that "[t]he police were justified in stopping the taxicab in which the defendant was a passenger after observing the cab traveling in an erratic fashion at a high rate of speed." *People v. Haynes*, 790 N.Y.S.2d 542, 543 (App. Div. 2005). With respect to Petitioner's ineffective assistance of counsel claim, the Appellate Division concluded that, "[v]iewing the record as a whole, the defendant received meaningful representation." *Haynes*, 820 N.Y.S.2d at 300. The New York Court of Appeals denied leave to appeal. *People v. Haynes*, 7 N.Y.3d 848 (2006). Accordingly, Petitioner's claims are exhausted. *See* 28 U.S.C. § 2254(b)(1) ("An application for habeas corpus . . . shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State.").

## II. Discussion

### a. Standard of Review

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established

4

federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

For the purposes of federal habeas review, "clearly established law" is defined as the "the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to," or an "unreasonable application of," clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412–13. In order to establish that a state court decision is an unreasonable application, the state court decision must be "more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The decision must be "objectively unreasonable." *Id.* In addition, factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### b. Fourth Amendment Claim

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976); *see also Graham v. Costello*, 299 F.3d 129, 133-34 (2d Cir. 2002) ("Fourth Amendment claims are not reviewable by the federal courts when raised in a petition brought under § 2254 unless the state prisoner shows that he or she has not had a full and fair opportunity to litigate that claim in the state court."). The Court of Appeals for the Second

Circuit has limited federal habeas review of Fourth Amendment claims to two instances: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). If a petitioner had a full and fair opportunity to litigate his or her Fourth Amendment claim in the state courts, regardless of whether he or she took advantage of that opportunity, "the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." *Costello*, 299 F.3d at 134.

New York provides criminal defendants an opportunity to litigate Fourth Amendment search and seizure issues before trial. *See* N.Y. Crim. Proc. Law §§ 710.10–70. The trial court conducted a full pretrial suppression hearing, pursuant to *Mapp v. Ohio*, 367 U.S. 643 (1961). (Resp. App. Br. 8–10.) Petitioner does not challenge the procedures he was afforded under New York law. Instead, Petitioner raises the same argument he advanced in the state courts—that the evidence at the suppression hearing was not credible and was not sufficient to establish reasonable suspicion. (Pet. 3.) The trial court's denial of Petitioner's motion to suppress based on its determination of the weight and credibility of the evidence at the suppression hearing is not reviewable by this Court. *Costello*, 299 F.3d at 134; *see Falas v. Phillips*, No. 03 Civ. 4839, 2004 WL 1730289, at *12 (S.D.N.Y. Aug. 3, 2004) (the court was precluded from reviewing petitioner's claim that the motion to suppress should have been granted because the police officer's testimony at the suppression hearing was incredible).

### c. Ineffective Assistance of Counsel

In order to prove ineffective assistance of counsel, a defendant must show that counsel's performances "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694. Where, as is the case here, the state court found that Petitioner received effective assistance of counsel, *Haynes*, 820 N.Y.S.2d at 300, the Court reviews that decision under the deferential standard of AEDPA. 28 U.S.C. § 2254(d).

Petitioner argues that his trial counsel was unable to provide meaningful representation and properly advise him of the consequences of testifying because his counsel misunderstood the trial court's *Sandoval* ruling. (Pet. Attach. ("Pet'r Stmt.") 4.) At trial, Petitioner's trial counsel admitted at side bar that he had not understood that the court's ruling allowed for cross examination on the nature of Petitioner's prior felony. (T. at 441.) Petitioner's trial counsel understood the ruling to allow only for the admission into evidence of the date and the fact of the prior felony conviction. *Id.* Petitioner argues that this misunderstanding affected the advice he received from his trial counsel and his ultimate decision to testify. (Pet'r Stmt. 4.) The parties do not dispute that trial counsel misunderstood the trial court's *Sandoval* ruling. The issue is whether this error was "so serious that the defendant was deprived of reasonably competent representation." *Yick Man Mui v. United States*, 614 F.3d 50, 56 (2d Cir. 2010).

The Appellate Division held that, "[v]iewing the record as a whole, the defendant received meaningful representation." *Haynes*, 820 N.Y.S.2d at 300. "When a federal court reviews a state court decision under § 2254, the question is not whether a federal court believes

the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (internal quotations and citations omitted). Petitioner has not identified any other alleged deficiencies in trial counsel's performance, (Pet'r Stmt. 4), nor did he identify any other alleged deficiencies in his state court appeal, (Pet'r App. Br. 35–44). While it is possible that, in certain instances, "even an isolated error" can support an ineffective-assistance claim, "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Harrington v. Richter*, 562 U.S. ----, ----, 131 S. Ct. 770, 791 (2011). Based on the record, Petitioner's trial counsel was an active and capable advocate at trial, as demonstrated by, among other things, his lengthy cross examinations of the People's key witnesses. Trial counsel's isolated error did not deprive Petitioner of effective assistance of counsel.

Even if trial counsel's representation had fallen below the objective standard of reasonableness, Petitioner failed to establish prejudice. The evidence at trial of Petitioner's guilt was overwhelming. McCoy identified Petitioner as the gunman in the robbery, and Petitioner was arrested ten minutes after the robbery, just eight blocks from the scene, with a gun and McCoy's cellphone and jacket. (Resp. App. Br. 24–25.) In light of the substantial evidence of Petitioner's guilt, the Court is not persuaded by Petitioner's argument that the admission of the nature of his prior conviction undermined the reliability of the outcome of the trial. Accordingly, Petitioner's ineffective assistance of counsel claim is denied.

## III. Conclusion

For the foregoing reasons, the petition for habeas corpus is denied and the Court will not issue a certificate of appealability. The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: April 17, 2012
      Brooklyn, NY

                                          /S/
                                   MARGO K. BRODIE
                                   United States District Judge